IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



F I L E D
APR 26 2017
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA

v.                                         Criminal No. 3:13CR200

ANGELA WALKER


## MEMORANDUM OPINION

Angela Walker, a federal inmate proceeding pro se, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 67.). The Government has responded. (ECF No. 79.) Walker filed an unsworn Reply. (ECF No. 82.) The matter is ripe for disposition.

In her § 2255, Walker lists five Claims that are comprised of various subparts and are repetitive, conclusory, and wholly meritless. For the reasons stated below, the Court will deny the § 2255 Motion.


## I.    FACTUAL AND PROCEDURAL HISTORY

On November 20, 2013, the grand jury charged Walker with conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable about of heroin (Count One), and possession with the intent to distribute one hundred grams or more of a mixture and substance containing a detectable amount of heroin (Count Two).

(Indictment 1-2, ECF No. 1.)   On April 11, 2014, Walker pled guilty, pursuant to a written plea agreement, to Count One of the Indictment.   (Plea Agreement ¶ 1, ECF No. 17.)   In the Statement of Facts supporting the Plea Agreement, Walker agreed that "the following facts [were] true and correct and that had the matter gone to trial the United States could have proven each of them beyond a reasonable doubt":

> From in or about January 2007, and continuing through in or about November 2013, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, ANGELA WALKER did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with others to distribute, and possess with intent to distribute, one kilogram or more of heroin, a Schedule I controlled substance, this amount of heroin being reasonably foreseeable to the defendant, in violation of Title 21, United States Code, Section 846.
> On May 25, 2012, law enforcement officers of the Virginia State Police made a lawful traffic stop of a vehicle in Henrico, Virginia.   The defendant, WALKER, was a passenger in that vehicle.   The troopers conducted a search of the car and found 759.5 grams of heroin located inside.   Prior to the stop of this vehicle, law enforcement had been alerted to the fact that WALKER was traveling to the area to deliver a large amount of heroin to several buyers in the Richmond area.   In fact, WALKER possessed the heroin found in the vehicle with the intent to distribute it.
> Moreover, several reliable cooperating sources corroborated that WALKER was a heroin trafficker from the New Jersey area, who traveled to the Richmond area to distribute heroin.   Many of these cooperators made statements against their penal interest and admitted to purchasing heroin in the Eastern District of Virginia from WALKER numerous times over the course of the conspiracy period.
> The parties agree that the attributable amount of drugs for sentencing purposes is at least one kilogram, but less than three kilograms of heroin.

(Statement of Facts 1-2, ECF No. 18 (paragraph numbers omitted).)

In her Plea Agreement, Walker agreed that she understood that she could receive a mandatory minimum term of imprisonment of ten years and a maximum term of life. (Plea Agreement ¶ 1.) Walker agreed that she was pleading guilty because she was "in fact guilty of the charged offense" and that she "admit[ted] the facts set forth in the statement of facts . . . and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt." (Id. ¶ 3.) Walker also agreed that she was "satisfied that [her] attorney has rendered effective assistance," and that by entering into the Plea Agreement that she surrendered her right to "plead not guilty," and her "right to a jury trial," including her right "at trial to confront and cross-examine adverse witnesses . . . ." (Id. ¶ 4.)

During the Rule 11 hearing, Walker agreed that she understood that Count One carried a mandatory minimum sentence of ten years of imprisonment and a maximum sentence of life imprisonment. (Apr. 11, 2014 Tr. 5, ECF No. 78.) Walker agreed that she "had a sufficient opportunity to discuss with [her] attorney everything about [her] case, including any possible defenses, as well as . . . whether or not to plead guilty" (Apr. 11, 2014 Tr. 6), and that she was "entirely satisfied with

what [her] attorney has done for [her]." (Apr. 11, 2014 Tr. 7.)
Walker agreed that she understood that she was waiving her right
"to demand that the government prove its case beyond a
reasonable doubt" about her guilt. (Apr. 11, 2014 Tr. 8.)
Walker understood that by pleading guilty, she was "admitting
the elements and [she was] admitting that the government can
prove the charges." (Apr. 11, 2014 Tr. 8.) She also indicated
that she understood that she was waiving her trial rights,
including "[t]he right to see and hear all the evidence against
[her], the right to the effective assistance of counsel at all
stages . . . includ[ing] a trial, [and t]he right to confront
and cross-examine any witness." (Apr. 11, 2014 Tr. 8.)

Walker agreed that, if the Court accepted her guilty plea,
"the only issue remaining would be what sentence is to be
determined." (Apr. 11, 2014 Tr. 9.) Walker agreed that she was
pleading guilty to conspiracy to distribute and possession with
intent to distribute one kilogram of more of heroin because she
was guilty of that charge and the facts set forth in the
Statement of Facts were true. (April 11, 2014 Tr. 16, 17.)
When asked whether there was "anything in these facts that [she
thought was] wrong or should be changed, or corrected or
explained or deleted," Walker stated: "No ma'am." (Apr. 11,
2014 Tr. 17.)

The Court found that Walker's guilty plea was knowing and voluntary, that it was "supported by an independent basis in fact containing each of the essential elements of the offense," and that Walker was "competent and capable of entering an informed plea." (Apr. 11, 2014 Tr. 17.)

The Presentence Investigation Report ("PSR," ECF No. 33), also provided the following information pertaining to the charges:

> In addition to the Statement of Facts, a review of the Government's file revealed that the defendant first came to the attention of the Drug Enforcement Agency in 2007, when a conspirator identified her as being a major source of heroin. He stated that from 2004 until 2007, he purchased between 10 and 15 ounces of heroin from the defendant approximately once or twice per month.
>
> A second individual was interviewed in 2009, and again in 2013. He indicated that from 2007 until 2009, he purchased a total of approximately 6 kilograms of heroin from the defendant over multiple transactions.
>
> In May 2012, another conspirator was developed as a cooperating source by law enforcement. He cooperated and revealed to law enforcement authorities that he had arranged a heroin drug transaction with the defendant that was to occur on May 25, 2012, in Richmond, Virginia. The drug transaction was to involve approximately 25 ounces of heroin.
>
> On May 25, 2012, law enforcement authorities monitored the defendant's cellular telephone and tracked the defendant's vehicle, a rented 2012 Acura TSX with Maryland plates, from New Jersey to Virginia. The vehicle traveled southbound on Interstate 95, and it was subsequently stopped by law enforcement authorities on Parham Road in Henrico County, Virginia. Three individuals, including the defendant, occupied the vehicle. The vehicle was driven by the defendant's sister, Stephanie Barrett, and a friend, Tierra Powell, was seated in the back seat. The

defendant was seated in the front passenger seat. A subsequent search of the vehicle recovered 759.5 grams of heroin in a purse located in the back seat of the vehicle. The defendant and two other occupants of the vehicle were thereafter arrested.

After her arrest, Tierra Powell [admitted] during an interview by law enforcement authorities to accompanying the defendant on four prior trips to the Richmond, Virginia area to conduct heroin transactions. Ms. Powell also stated that the defendant had rented a vehicle as the defendant's Honda Accord was having work performed by a mechanic. Ms. Powell revealed that the defendant's Honda Accord had a "trap" or secret compartment in the dash board that could be opened and closed by pulling the emergency brake and then pushing the sunroof button. On May 31, 2012, law enforcement authorities executed a search and seizure warrant on a 2004 Honda Accord EX located at Tishcer Acura, Laurel, Maryland, which revealed this concealed compartment as indicated by Ms. Powell.

When questioned by law enforcement authorities after their arrest, Stephanie Barrett and the defendant denied any knowledge of the heroin recovered from the vehicle.

(PSR ¶¶ 10-15.)

The PSR determined that Walker's base offense level was 32 because the offense involved between one and three kilograms of heroin as the parties agreed in the Plea Agreement. (PSR Wkst. A, at 1.) Walker received a three-point reduction for acceptance of responsibility, resulting in an offense total of 29. (Id. Wkst. D, at 1.) Walker's criminal history category was IV, resulting in a sentencing guidelines range of 121 to 151 months of incarceration. (Id.) On September 11, 2014, the Court sentenced Walker to the mandatory minimum of 120 months of

incarceration below the recommended guidelines range.  (J. 2, ECF No. 39.)  Walker filed no appeal.

On August 25, 2015, Walker filed the instant § 2255 Motion.

## II. GROUNDS FOR RELIEF

Walker lists five claims that are comprised of various subparts.  Walker's claims are essentially in list format and are repetitive, vague, conclusory, belied by the record, and wholly meritless.  In her § 2255 Motion, Walker raises the following claims for relief:[1]

Claim One:  Counsel provided ineffective assistance[2] at the "Indictment Stage" by:
  (a) "fail[ing] to challenge the Indictment as it listed a conspiracy charge and the explanation by the witnesses in my case is clearly a buyer-seller relationship" (§ 2255 Mot. 4);
  (b) "fail[ing] to challenge the witness statements as the dates given Ms. Walker was in prison in New York" (id.);
  (c) failing to "challenge[] all aspects of charge Count Two which was dropped when Ms. Walker pled to Count One" (id.);
  (d) failing to challenge the illegal traffic stop which was "based upon a sting drug operation law enforcement was conducting, yet stopped Ms. Walker

---

[1]  The Court corrects the capitalization, spelling, punctuation, and spacing in the quotations from Walker's submissions.  The Court employs the pagination assigned by the CM/ECF docketing system to quotations from Walker's submissions.

[2]  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

before the transaction took place." (Id.)

Claim Two: Counsel "conduct[ed] an inadequate investigation" by:
- (a) "fail[ing] to take any steps to investigate any of the Government's claims" (id. at 5);
- (b) "fail[ing] to question the traffic stop and why Ms. Walker was detained" (id.);
- (c) "fail[ing] to question why the witnesses were being labeled as co-conspirators when the relationship is clearly described as a buyer-seller relationship (id.);
- (d) "fail[ing] to challenge measurable amounts, proximity, or constructive possession" (id.);
- (e) "fail[ing] to challenge the informant against Ms. Walker and his affiliation with her" (id.);
- (f) "fail[ing] to request to see the ticket issued from the traffic stop or a written report as to why the vehicle was search[ed]" (id.);
- (g) "fail[ing] to request a copy of the search warrant, which Ms. Walker states law enforcement did not have one to search her vehicle . . . ." (Id.)

Claim Three: Counsel rendered "ineffective assistance at Plea Agreement Stage" by:
- (a) "advis[ing] Ms. Walker to take the conspiracy charge as it held less time than the possession charge" (id. at 7);
- (b) "fail[ing] to advise Ms. Walker of her right to go to trial where the Government would have had to produce witnesses and their statements and Ms. Walker could have confronted these witnesses" (id.);
- (c) failing to "advise her of her rights at the traffic stop . . . ." (Id.)

Claim Four: Counsel rendered ineffective assistance at sentencing by:
      (a) failing to "fight for a downward departure due to the limited resources at FMC Carswell to treat Ms. Walker" for a "rare medical condition . . ." (id. at 8);
      (b) failing to "object at sentencing when Ms. Walker was stated to be a 'major source of drugs,' as there was no actual proof of this" (id.);
      (c) "fail[ing] to object that the Government showed prejudice against Ms. Walker by not prosecuting the other two women in the car that day . . . ." (Id.)

Claim Five: Counsel provided deficient "advice to client" (id. at 12) by:
      (a) advising Ms. Walker to plead guilty to the conspiracy count instead of the possession count;
      (b) failing to fully explain the sentencing guidelines with respect to the mandatory minimum of ten years;
      (c) failing to "put Ms. Walker's best interest in front of the Government's . . . and requested they prove beyond a reasonable doubt that Ms. Walker was guilty to either charge before ever advising her to take a plea agreement" (id.);
      (d) failing to "question[] Ms. Walker or law enforcement about the illegal search and seizure in the action of the traffic stop that took place to prompt Count Two of the Indictment" (id.);
      (e) failing to "question[] why neither of the other two women were held and released and then non-processed." (Id.)

As discussed below, Walker's conclusory claims lack merit.

### III.  ALLEGED INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." Hill
v. Lockhart, 474 U.S. 52, 59 (1985). Of course, in conducting
the foregoing inquiry, the representations of the convicted
defendant, his lawyer, and the prosecutor during the plea
proceedings, "as well as any findings made by the judge
accepting the plea, constitute a formidable barrier in any
subsequent collateral proceedings." Blackledge v. Allison, 431
U.S. 63, 73-74 (1977). In light of the strong presumption of
verity that attaches to a petitioner's declarations during his
plea proceedings, "in the absence of extraordinary
circumstances, allegations in a § 2255 motion that directly
contradict the petitioner's sworn statements made during a
properly conducted Rule 11 colloquy are always 'palpably
incredible' and 'patently frivolous or false.'" United States
v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations
omitted). Thus, the Fourth Circuit has admonished that "in the
absence of extraordinary circumstances, the truth of sworn
statements made during a Rule 11 colloquy is conclusively
established, and a district court should, without holding an
evidentiary hearing, dismiss any § 2255 motion that necessarily
relies on allegations that contradict the sworn statements."
Id. at 221-22. No circumstances exist here that would lead the
Court to consider Walker's prior sworn statements as other than
truthful.

## A. Pre-Trial Proceedings[3]

The majority of Walker's claims of ineffective assistance of counsel derive from her continued protestations that insufficient evidence existed to convict her, despite the compelling evidence of her guilt. Walker, however, fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's purported errors.

In the first series of conclusory and repetitive claims, Walker argues that counsel provided ineffective assistance for failing to challenge the charges and evidence against her. As discussed below, Walker's contentions now are belied by her sworn statements under oath. Moreover, Walker offers no plausible defense strategy that counsel omitted. The inchoate defenses Walker offers lack any reasonable probability of success.

In Claims One (a) and Two (c), and underlying many of her other claims, Walker believes that counsel failed to challenge the charges against her. Walker believes that because "no other co-conspirators were named or charged in her case," she cannot be guilty of conspiracy. (Reply 2, ECF No. 82.) Walker is incorrect. "The identity of the other members of a conspiracy is not needed, inasmuch as one person can be convicted of

---

[3] This section encompasses the majority of Walker's claims. Specifically, in this section the Court addresses all of Claims One and Two, Claim Three (c), and Five (d) and (e).

conspiring with persons whose names are unknown." Rogers v. United States, 340 U.S. 367, 375 (1951); see United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991). Here, the Government had sufficient evidence to demonstrate that Walker was engaged in an agreement to buy and sell heroin with more than two persons, and thus, was engaged in a conspiracy, not a simple buyer/seller relationship. Counsel reasonably eschewed raising any challenge to the conspiracy count because the evidence established that, on more than one occasion Walker transported large quantities of heroin from New Jersey to Richmond and sold the drugs to more than one buyer. Walker also clearly obtained these large quantities of heroin from another individual who, based on the amount of heroin purchased, likely knew that Walker would distribute the drugs. Cf. United States v. Muhammad, 337 F. App'x 349, 350 (4th Cir. 2009).

Moreover, in her Plea Agreement and in the Rule 11 hearing, Walker admitted that she was pleading guilty because she was in fact guilty of Count One of the Indictment. Walker's statements to the contrary are "palpably incredible" in light of her sworn statements during the Rule 11 proceedings. Lemaster, 403 F.3d at 222 (citation omitted). Claims One (a) and Two (c) lack merit and will be dismissed.

In Claim One (b), Walker also contends that counsel rendered ineffective assistance by "fail[ing] to challenge the

witness statements as to the dates given Ms. Walker was in prison in New York." (§ 2255 Mot. 4.) In her Reply, Walker explains that one witness indicated that he purchased drugs from Walker over a period of three years, and the second witness said he purchased six kilograms from Walker between 2007 and 2009. (Reply 1.) Walker indicates that she was in prison from July 2006 to July 2007 and was serving parole until 2010 (id.), and "was not able to leave the area of her parole and therefore, could not have trafficked any heroin." (Id. at 3.) The Government alleged, and Walker agreed in the Statement of Facts, that the conspiracy ran from 2007 until 2013. The Court fails to discern, and Walker fails to explain, why the witnesses's statements were necessarily false considering she was out of jail after July 2007, and simply being on parole did not necessarily preclude her from conspiring to sell heroin during that time period. In addition, the conspiracy ran three years beyond the end of her period of parole. Counsel cannot be faulted for failing to challenge the witnesses's statements about the timing of her criminal activity. Claim One (b) lacks merit and will be dismissed.

In Claim One (c), Walker faults counsel for not challenging "all aspects of charge Count Two which was dropped when [she] pled to Count One." (§ 2254 Mot. 4.) In Claim Two (a), Walker vaguely suggests that counsel erred by failing to investigate

"any of the Government's claims." (Id. at 6.) In Claim Two
(e), Walker faults counsel for failing "to challenge the
informant against Ms. Walker and her affiliation with her."
(Id.) Finally, in Claim Two (d), Walker faults counsel for
failing to challenge the drug amounts or quantity. (Id.)
Walker provides no coherent supporting argument in support of
these conclusory claims. Moreover, these claims fail because
Walker fails to identify with any specificity what possible
defense or challenge counsel could have raised. Walker fails to
demonstrate deficiency of counsel or resulting prejudice based
on these vague, conclusory allegations. Sanders v. United
States, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion
appropriate where it "stated only bald legal conclusions with no
supporting factual allegations"). Accordingly, Claims One (c),
Two (a), Two (d), and Two (e) lack merit and will be dismissed.

Walker also faults counsel on several grounds with respect
to the allegedly "illegal" traffic stop that occurred without a
warrant. (§ 2254 Mot. 4.) These claims are conclusory and
repetitive. Specifically, in Claim One (d), Walker faults
counsel for failing to challenge the "illegal" traffic stop
which was "based upon a sting drug operation law enforcement was
conducting, yet stopped Ms. Walker before the transaction took
place." (Id.) In Claim Two (b) and Five (d), she faults
counsel for "fail[ing] to question the traffic stop and why Ms.

15

Walker was detained" (id.at 5), and for failing to "question[]
Ms. Walker or law enforcement about the illegal search and
seizure." (Id. at 12). In Claim Two (f), Walker blames counsel
for "fail[ing] to request to see the ticket issued from the
traffic stop or a written report as to why the vehicle was
search[ed]," and in Claim Two (g), she blames counsel for
"fail[ing] to request a copy of the search warrant" even though
she "states law enforcement did not have one to search her
vehicle." (Id. at 5.) Finally, in Claim Three (c), Walker
contends that counsel failed to "advise her of her rights at the
traffic stop." (Id. at 7.)

Once again, Walker fails to identify with any specificity
on what grounds counsel could have reasonably challenged the
stop and search of the vehicle. Cooperating witnesses had
identified Walker as a major heroin supplier. (Statement of
Facts 1-2.) One cooperating witness indicated that Walker would
be driving from New Jersey to Richmond to distribute a large
amount of heroin on May 25, 2012. (Id.; PSR ¶¶ 12-13.) Law
enforcement tracked Walker's cell phone on her trip and when she
arrived in Richmond her car was stopped and searched. (PSR
¶ 13.) The search yielded 759.5 grams of heroin in the car.
(Statement of Facts 1.) Walker fails to suggest and this Court
fails to discern, any plausible constitutional challenge to the
traffic stop or search of the vehicle that counsel should have

raised. Walker fails to demonstrate deficiency of counsel or resulting prejudice based on these vague, conclusory allegations. Sanders, 373 U.S. 1, 19 (1963). Accordingly, Claims One (d), Two (b), Two (f), Two (g), Three (c), and Five (d) will be dismissed.

Next, in Claims Four (c)[4] and Five (e), Walker faults counsel for failing to question why the other two women in the vehicle were not prosecuted. The Court fails to discern any deficiency of counsel or resulting prejudice. Walker never states that the heroin in the car belonged to one of the other two women and not to her. Moreover, this statement would belie her Plea Agreement and her statements made under penalty of perjury at the Rule 11 hearing. Walker also fails to explain how the Government's decision not to prosecute the other two women in the car has any bearing on Walker's guilt. Thus, counsel would have reasonably eschewed questioning the Government on this ground. Walker demonstrates no deficiency of counsel or resulting prejudice. Accordingly, Claims Four (c) and Five (e) will be dismissed.

Moreover, no need exists for the Court to address extensively Walker's abundant individual critiques of counsel

---

[4] Walker brings this claim under her general challenge to counsel's performance at sentencing. This claim has nothing to do with sentencing, and the Court addresses it in conjunction with Walker's claim pertaining to deficient advice.

17

which undoubtedly lack merit, as Walker demonstrates no prejudice from counsel's purported errors. Walker fails to demonstrate that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Overhwhelming evidence existed that Walker conspired to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable about of heroin fifty, and possessed with the intent to distribute one hundred grams or more of a mixture and substance containing a detectable amount of heroin. Cooperating witnesses identified Walker as a major source of heroin between 2007 and 2013. (Statement of Facts 1-2), and based on a tip from one of these witnesses, law enforcement tracked Walker's car from New Jersey to Richmond, and search of that vehicle produced 759.5 grams of heroin. (Id. at 1.) According to interviews with cooperating witnesses and a woman who was in the car with Walker when it was stopped, during the period of 2007 until 2013, Walker conspired to distribute more than six kilograms of heroin, far more than the one to three kilograms that she and the Government agreed was the relevant drug quantity in her Plea Agreement. (See PSR ¶¶ 10-12, 14; Statement of Facts 1-2.)

Walker also cannot demonstrate that a reasonable defendant in her position would have pleaded not guilty and insisted on

going to trial.  Hill, 474 U.S. at 59.  Without the benefit of the guilty plea, Walker would have faced a significantly longer sentence.    The Government charged Walker with conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable about of heroin (Count One), and possession with the intent to distribute one hundred grams or more of a mixture and substance containing a detectable amount of heroin (Count Two).  Count One carried a mandatory minimum sentence of ten years up to a maximum sentence of life in prison.    Count Two carried a mandatory minimum sentence of five years up to a maximum sentence of forty years in prison.  By pleading guilty, the Government agreed to cap the amount of drugs attributable to Walker to at least one kilogram, but less than three kilograms, of heroin.    Based on that quantity of heroin, Walker's base offense level for the sentencing guidelines was 32.  By pleading guilty and accepting responsibility for her actions, Walker also received the benefit of a three-point reduction in her offense level to 29, which resulted in a sentencing guidelines range of 121 to 151 months.

However, if Walker had not entered into a guilty plea, the drug quantity attributable to her could have easily doubled. According to information reported in the PSR, cooperating witnesses indicated that Walker was responsible for conspiring to distribute in excess of six kilograms of heroin between 2007

and 2013. (PSR ¶ 12.) The base offense level for between three kilograms and less than ten kilograms increases to 34. If Walker had gone to trial, her base offense level could have easily been 34 and she would not have received the three-point reduction for acceptance of responsibility. With a base offense level of 34 and a criminal history category of IV, Walker's sentencing guidelines range would have increased to 210 to 262 months, instead of the 121 to 151 month range that resulted from her guilty plea.

In light of the compelling evidence of her guilt of both counts, and the benefits she received from entering the guilty plea, Walker cannot show that a reasonable defendant, in her position, would have insisted on proceeding to trial. Accordingly, Walker fails to demonstrate prejudice from counsel's actions. As previously stated, Claims One, Two, Claim Three (c), Five (d) and Five (e) will be dismissed.

### B. Guilty Plea Claims

In portions of Claims Three and Five, Walker faults counsel for various purported deficiencies with regard to her decision to plead guilty. Walker's claims are either belied by the record or are patently false. For example, in Claims Three (a) and Five (a), Walker argues that counsel deficiently advised her to plead guilty to the conspiracy charge instead of the possession charge "as it held less time than the possession

charge." (§ 2255 Mot. 7, 12.)[5] Walker has not demonstrated that there was plea offer made that would have allowed Walker to plead guilty to the possession count instead of the conspiracy count. The Government affirms that there was not. (See Gov't's Resp. 13.) Thus, counsel could not have advised her with respect to non-existent plea offer. Accordingly, Claims Three (a) and Five (a) will be dismissed.

In Claim Five (c), Walker contends that counsel failed to "put [her] best interest in front of the Government's . . . and request[] they prove beyond a reasonable doubt that [she] was guilty to either charge before ever advising her to take a plea agreement." (Id. at 12.) In essence, Walker faults counsel for not requesting that the Government take the case to trial prior to allowing her to plead guilty. Counsel cannot be faulted for making such an unreasonable request that the Government would have certainly refused. Claim Five (c) lacks merit and will be dismissed.

In the remaining claims, Walker faults counsel for "fail[ing] to advise [her] of her right to go trial where the Government would have had to produce witnesses and their

---

[5] In Claim Three (a), Walker states that "[c]ounsel told Ms. Walker that if she pled guilty to the conspiracy charge the Government would agree to give her 10 years." (§ 2255 Mot. 7.) That is the exact sentence Walker received. The Court discerns no deficiency of counsel or resulting prejudice from counsel's accurate estimation of Walker's sentence.

statements and Ms. Walker could have confronted these witnesses" (id. (Claim Three (b)), and failing to explain the mandatory minimum sentence to her (Claim Five (b)). These claims defy belief and warrant little discussion.

Even if the Court were to believe that counsel somehow failed to tell Walker that the mandatory minimum sentence she could receive was ten years, or about her trial rights, Walker demonstrates no prejudice. Walker agreed that she understood that the mandatory minimum sentence she could receive was ten years in both her Plea Agreement and during the Rule 11 hearing. Walker also agreed in her Plea Agreement and at the Rule 11 hearing that by pleading guilty she was giving up any defense to the charges and her right to have a trial. Walker demonstrates no deficiency of counsel or resulting prejudice, and Claims Three (b) and Five (b) will be dismissed.

### C. Sentencing Claims

In Claim Four, Walker argues that counsel rendered ineffective assistance during sentencing. In Claim Four (a), Walker faults counsel for failing to "fight for a downward departure due to the limited resources at FMC Carswell to treat [her]" for her "rare medical condition." (§ 2255 Mot. 8.) As discussed below, Walker fails to demonstrate any deficiency of counsel or resulting prejudice.

The PSR noted that in 2003, Walker was diagnosed with a serious medical condition. (PSR ¶ 55.)[6] Prior to sentencing, counsel notified the Court of Walker's "very significant medical history," that required "high-level maintenance and state-of-the-art monitoring and diagnosis" and indicated that Walker "question[ed] whether the Bureau of Prisons has the capacity to provide adequately for her life-threatening conditions" and argued that even "the minimum punishment may be a greater sentence than necessary to accomplish the goals of sentencing." (Def's Pos. Sentencing 2, ECF No. 26.) Due in part, to the efforts of counsel, the Court engaged in great effort to ensure that Walker received the appropriate sentence and the appropriate medical care.

On July 31, 2014, the Court conducted a hearing on Walker's medical conditions, and by Order entered August 1, 2014, the Court continued Walker's sentencing generally in order for her to receive the medical treatment that had already been scheduled by her physician, and directed the Bureau of Prisons "to evaluate [Walker's] medical condition prior to [her] sentencing . . . and to inform the Court where [she] may be incarcerated after sentencing where she may receive appropriate medical treatment." (ECF No. 28, at 2; ECF No. 29.)

_____

[6] The documents containing extensive information about Walker's medical conditions and history were filed under seal. The Court omits any discussion of the sealed information here.

On August 6, 2014, the Government filed an update with the Court about Walker's medical history and condition. (ECF No. 32.) On August 20, 2014, the Court held a status conference on Walker's medical condition and the treatment she was scheduled to receive. The Court ordered that the Government "shall ensure" that Walker received the prescribed tests and treatment, and that the test results and treatment recommendations would be made available to all counsel and the Court. The Court again continued sentencing generally. (ECF No. 36, at 1-3.)

After Walker saw the specialist and had the tests, the Government again provided an update to the Court. (ECF No. 37.) Walker's test results were normal and the specialist recommended against further previously recommended treatment. (Id. at 3.) Based on this information, the Bureau of Prisons indicated that they were capable of proper care and treatment of Walker who would be assigned to FMC Carswell in Texas and would be referred to a specialist. (Id.) On September 10, 2014, the Court held a status conference and based on the medical information provided, the Court also proceeded to conduct Walker's sentencing. (ECF No. 38.) In the Judgment, the Court sentenced her below the sentencing guidelines, to the statutory mandatory minimum sentence of 120 months of incarceration and further directed that

> the defendant be incarcerated at the FMC Carswell
> unless the Bureau of Prisons shall advise the Court in
> writing that the defendant cannot receive the medical
> treatment recommended by Dr. Evers. In particular she
> is to be seen within SIXTY (60) DAYS by a Sarcoid
> Specialist and the Bureau of Prisons shall insure and
> abide by the treatment recommended by the specialist.

(J. 2, ECF No. 39.) The Court sentenced Walker to the lowest sentence permitted by law. Thus, the Court fails to discern any prejudice from counsel's alleged error in not specifically moving for a downward departure based upon Walker's medical conditions.

In her Reply, Walker admits that "[t]he court did review Ms. Walker's medical condition, but did not get information on how she would be treated at FMC Carswell." (Reply 6, ECF No. 82.) She contends that she "has been treated for her symptoms of the illness, but not actually her illness itself. Ms. Walker had specific instructions by her long term doctor on the outside, yet his instructions were and are not being followed by FMC Carswell." (Id. at 6-7.) To the extent that Walker even raises a claim of ineffective assistance of counsel with these allegations, she fails to demonstrate any prejudice. Instead, Walker disagrees with the decision to send her to FMC Carswell and her medical care at that facility. To the extent that Walker intends to challenge her medical care while incarcerated, she must do so through a separate civil action in the jurisdiction where she is incarcerated. The Court will not

engage in that discussion here.[7] Walker fails to demonstrate any deficiency of counsel or resulting prejudice. Claim Four (a) will be dismissed.

In Claim Four (b), Walker faults counsel for failing "to object at sentencing when Ms. Walker was stated to be a 'major source of drugs,' as there was no actual proof of this . . . ." (§ 2255 Mot. 8.) Walker fails to demonstrate any prejudice from counsel's failure to object to this statement.

In her Plea Agreement, Walker agreed that she was responsible for one to three kilograms of heroin. The probation officer also based her sentencing guidelines calculation on the one to three kilogram range that she agreed to in her Plea

---

[7] Well after sentencing, the Court continued to ensure that Walker was receiving appropriate care. On its own initiative, by Order entered on November 18, 2014, the Court directed the Government and Walker's counsel to "immediately look into" whether "the medical treatment of the defendant has not been complied with" and to report to the Court in writing by November 24, 2014. (ECF No. 41, at 1.) The Court received detailed updates, medical records, and reports about Walker's medical care after her sentencing and extensively examined Walker's complaints about her medical care. By Order entered on February 25, 2015, the Court found the following: "Having examined all of that material, the Court is satisfied that the Bureau of Prisons has the medical records it needs; that Ms. Walker has been treated by the appropriate sarcoid specialists and other doctors knowledgeable of her condition . . . ." (ECF No. 50, at 2.) The Court also "advise[d] Ms. Walker to cooperate with her doctors who appear to be providing the necessary and proper care for her conditions. Further, she is advised to heed the instructions of her doctors respecting the administration of the drug Cytoxan." (Id.) In response to further correspondence from Walker, in a May 13, 2015 letter from the Court to Walker, the Court informed Walker that it no longer had jurisdiction over her case. (ECF No. 52, at 1.)

Agreement. Walker's ultimate sentencing guidelines range was 121 to 151 months of incarceration. Instead, of sentencing her within that range, the Court sentenced Walker to 120 months of incarceration, the lowest permitted by law. Thus, Walker fails to show that the classification of Walker as a "major source of drugs" had any bearing on her sentence. Walker fails to identify and the Court fails to discern any deficiency of counsel for failing to object to this statement or resulting prejudice. Claims Four (b) lacks merit and will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Walker's claims will be dismissed. Walker's § 2255 Motion (ECF No. 67) will be denied and the action will be dismissed. Walker's Motion Requesting Disposition of her § 2255 Motion (ECF No. 83) will be denied. A certificate of appealability ("COA") will be denied.[8]

---

[8] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Walker fails to satisfy this requirement.

The Clerk is directed to send a copy of this Memorandum Opinion to Walker and counsel of record.

It is so ORDERED.

_____ /s/ _REP_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 26, 2019